LESLIE B. LAMPTON                                                                    PLAINTIFF

V.                                              CIVIL ACTION NO. 3:09cv324-DPJ-MTP

OLIVER E. DIAZ, JR., and
JENNIFER DIAZ                                                                   DEFENDANTS

V.

LESLIE LAMPTON, DUNNICA LAMPTON,
DARLENE BALLARD, and JOHN DOES 1-15          THIRD-PARTY DEFENDANTS

## ORDER

This cause is before the Court on the following motions: Third-Party Defendant Dunnica

Lampton's motions to dismiss [25, 38, 90] and to strike [47, 88, 97, 101]; Third-Party Defendant

Darlene Ballard's motions for summary judgment [34, 69] and for leave to file surreply [54];

Defendant/Counterclaimant/Third-Party Plaintiff Jennifer Diaz's motion to continue [40];

Defendant/Counterclaimant/Third-Party Plaintiff Oliver E. Diaz Jr.'s motion to continue [55];

and Plaintiff/Counter-Defendant Leslie B. Lampton's motion for summary judgment [58].  The

Court has considered the parties' submissions and the applicable law and is prepared to rule as

set forth below.

## I.     Facts and Procedural History

These litigants have a long history that pre-dates the subject dispute.  Between 2003 and

2006, Defendants/Counterclaimants/Third-Party Plaintiffs Oliver E. Diaz Jr., then a Mississippi

supreme court justice, and his wife Jennifer Diaz were prosecuted on various fraud, bribery, and

tax evasion charges.  Oliver Diaz was ultimately acquitted, and Jennifer Diaz pleaded guilty to

tax evasion.  After the criminal prosecution ended, Third-Party Defendant and then-U.S.

Attorney Dunnica Lampton filed a complaint with the Mississippi Commission on Judicial Performance ("the Commission") that initiated an investigation of Oliver Diaz. According to the Diazes, Dunnica Lampton submitted to the Commission certain of the Diazes' tax and other financial records he had obtained during the prior federal criminal investigation.

Plaintiff/Counter-Defendant Leslie Lampton, a relative of Dunnica Lampton's, served as a member of the Commission and participated in the Commission's investigation of Mr. Diaz. In 2008, the Diazes learned that the Commission had their financial information and asked for its return, apparently leading to a Department of Justice investigation into its disclosure. Third-Party Defendant Darlene Ballard, staff attorney for the Commission, responded to Oliver Diaz's request for the return of the information in a way the Diazes found "mocking" and "glib," and Ballard ultimately returned the information not to the Diazes but to Dunnica Lampton. In December 2008, the Commission dismissed the Complaint against Oliver Diaz.

On January 20, 2009, counsel for the Diazes sent Leslie Lampton a letter threatening legal action based on his role in the investigation. Leslie Lampton responded on January 30, 2009, by filing a complaint in the Circuit Court of Madison County, Mississippi, seeking a declaratory judgment of immunity from suit by the Diazes related to conduct arising out of his duties with the Commission. The suit was not initially filed under seal and revealed the Commission's investigation. On May 4, 2009, Jennifer Diaz filed a counterclaim against Leslie Lampton and a third-party complaint against Darlene Ballard and Dunnica Lampton. Dunnica Lampton removed the case on June 3, 2009, pursuant to 28 U.S.C. § 1442. On August 26, 2009, Oliver Diaz filed his counterclaim against Leslie Lampton and third-party complaint against Darlene Ballard and Dunnica Lampton [33].

As amended, Jennifer Diaz's counterclaim and third-party complaint alleges a litany of state and federal causes of action against Ballard and the Lamptons, including: procurement of tax records in violation of 26 U.S.C. §§ 6103 and 7431, 42 U.S.C. §§ 1983 and 1985, and Mississippi statute and common law; invasion of privacy; abuse of process; civil conspiracy; misprision; and the tort of outrage. Oliver Diaz's counterclaims against Leslie Lampton include § 1985 conspiracy, emotional distress, invasion of privacy, and breach of confidentiality. Oliver Diaz's third-party complaint against Dunnica Lampton alleges abuse of process; malicious prosecution; violation of § 1983 based on the deprivation of rights protected by 18 U.S.C. § 1905 and 26 U.S.C. §§ 6103 and 7213; § 1985 conspiracy; emotional distress; and invasion of privacy. Oliver Diaz's third-party complaint against Darlene Ballard alleges misprision, § 1985 conspiracy, emotional distress, and invasion of privacy. The Diazes seek compensatory damages, punitive damages, damages for emotional distress, and fees and costs from the Lamptons and Ballard. This Court exercises jurisdiction under 28 U.S.C. §§ 1441–1442 and supplemental jurisdiction over related state law claims under 28 U.S.C. § 1367. The above referenced motions are ripe, and the Court addresses each of them below.

## II.     Applicable Standards

### A.     Motion to Dismiss

In considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)). To overcome a Rule 12(b)(6) motion, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555 (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id*. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

B.    <u>Motion for Summary Judgment</u>

Summary judgment is warranted under Rule 56(c) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id*. at 324. Conclusory allegations, speculation, unsubstantiated assertions, and

4

legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

## III.    Analysis

### A.    Dunnica Lampton's Motions to Dismiss and Related Motions

Dunnica Lampton moved to dismiss the counterclaims of both Oliver and Jennifer Diaz for failure to state a claim pursuant to Rule 12(b)(6) [25, 38], and he renewed his motion when Jennifer Diaz amended her counterclaim [90]. While the motions to dismiss have spawned motions to strike and to continue, the only substantive issue raised in Dunnica Lampton's motions to dismiss is whether he is entitled to absolute prosecutorial immunity.

#### 1.    *Prosecutorial Immunity*

Prosecutors enjoy absolute immunity for violations committed in the course of "initiating a prosecution and presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). Although prosecutorial immunity is absolute when applicable, not all acts qualify. Thus, "the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) (citations and quotations omitted). Rather, [q]ualified immunity represents the norm for executive officers." *Id.* When

deciding whether absolute immunity exists, the court looks to the function the prosecutor served and limits absolute immunity to those actions "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430.

Lampton's initial memorandum barely exceeds two pages in length and merely provides a block quote from the Fifth Circuit's unpublished opinion in *Quinn v. Roach*, 326 F. App'x 280, 292 (5th Cir. 2009). While *Quinn* provides some of the more familiar black letter law, it is factually distinguishable and of little additional value. Lampton cites no additional authority, makes no effort to analyze the issues addressed in *Quinn*, and otherwise fails to delve into the complex analysis required to satisfy his burden of establishing a right to absolute immunity. *See Hoog-Watson v. Guadalupe County, Tex.*, 591 F.3d 431, 437 (5th Cir. 2009) (holding that defendant claiming absolute immunity carries burden of proving it applies) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993)).

Looking more closely, the Fifth Circuit has provided a framework for addressing claims of prosecutorial immunity. The "first task is to define the conduct at issue . . . ." *Hoog-Watson*, 591 F.3d at 437. Here, the disputed conduct was Lampton's post-prosecution decision to report Oliver Diaz to the Commission and provide the Commission with the tax and other financial records obtained during the criminal prosecution.

The "second task is to determine whether such conduct falls within the scope of . . . immunity." *Id.* at 438. This requires two additional steps with respect to the § 1983 claim:

> To determine the scope of a prosecutor's absolute immunity from § 1983 liability, we ignore formal labels of identity and ask (1) whether, at the time of § 1983's enactment, the practical function of the conduct at issue merited absolute immunity, and (2) whether, at present, absolute immunity for the conduct at issue is necessary to advance the policy interests that justified the common law immunity. Under these principles, prosecutorial immunity extends to conduct

6

that is "intimately associated with the judicial phase of the criminal process," but not to "those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings."

*Id.* (citing *Buckley*, 509 U.S. at 273; *Burns v. Reed*, 500 U.S. 478, 486 (1991); *Imbler*, 424 U.S. at 430) (other citations omitted).

In *Imbler*, the United States Supreme Court explained that common law immunity has long existed for prosecutors against claims of malicious prosecution and for defamatory remarks made during and relevant to a judicial proceeding. 424 U.S. at 438-39. Here, Lampton allegedly provided tax records to an outside commission after the prosecution was complete. This obviously falls beyond these original concepts. Although the scope of immunity has arguably been expanded of late, *see Van de Kamp v. Goldstein*, 129 S. Ct. 855, 859-60 (2009), Lampton has identified no cases addressing absolute prosecutorial immunity in the context presented. It appears that the disputed act fails to enjoy the historical support for absolute *prosecutorial* immunity noted in *Imbler*. *See Burns*, 500 U.S. at 492 (refusing to find absolute prosecutorial immunity for giving legal advice to police and noting that "neither respondent nor the court below has identified any historical or common-law support for extending absolute immunity to such actions by prosecutors").[1]

Absolute prosecutorial immunity in the current setting would not only exceed historical precedents, but it is also unnecessary to "advance the policy interests that justified the common law immunity." *Hoog-Watson*, 591 F.3d at 438. Again, *Imbler* provides a strong starting point. In that case, the Court identified a number of public interests that support absolute immunity,

---

[1]Lampton relies solely on absolute prosecutorial immunity, and the review of common law is therefore limited to that source of immunity.

including: (1) the need to avoid vexatious suits that might inhibit a prosecutor from bringing charges or affect prosecutorial decisions; (2) the available checks in the judicial process that undermine the argument that civil liability is necessary to ensure that prosecutors do not violate constitutional rights; and (3) the impact that § 1983 claims against prosecutors might have on judges when deciding issues in the case. *Id*. at 426-27, 429, 438.

First, the lack of similar reported cases reflects that the risk of vexatious litigation "is not as great as the risk of vexatious litigation arising from the district attorney's role in initiating and prosecuting a case." *Hughes v. Tarrant County Tex*., 948 F.2d 918, 923 (5th Cir. 1991) (finding no immunity for giving advice to county officials). Second, the act occurred after acquittal and outside the judicial process. It was not, therefore, subject to the types of judicial checks that would apply to alleged misconduct during criminal prosecution. Finally, with respect to the impact on judges, *Imbler* observed that a judge must focus during the judicial phase on whether the defendant received a fair trial. "This focus should not be blurred by even the subconscious knowledge that a post-trial decision in favor of the accused might result in the prosecutor's being called upon to respond in damages for his error or mistaken judgment." *Imbler*, 424 U.S. at 427. Again, no such considerations attach to post-acquittal conduct of the sort alleged in this case.

Even if the lack of absolute immunity might interfere with the performance of a prosecutor's job, the policies supporting absolute immunity are not present unless the prosecutor's acts are "intimately associated with the judicial phase of the criminal process." *Hoog-Watson*, 591 F.3d at 438 (citing *Imbler*, 424 U.S. at 430); *see Harris v. Dallas County Dist. Attorney's Office*, 196 F.3d 1256, No. 98-10894, 1999 WL 800003, at *1 n.5 (5th Cir. Sept. 14, 1999) (unpublished) (The "determinative factor in analyzing an assertion of absolute

prosecutorial immunity is whether or not the prosecutor's activities are activities intimately associated with the judicial phase of the criminal process." (citing *Kalina v. Fletcher*, 522 U.S. 118, 125 (1997)).

This theory was explored in *Burns v. Reed*, where the United States Supreme Court considered whether the act of giving advice to the police qualified for absolute prosecutorial immunity or merely qualified immunity. 500 U.S. 478 (1991). The Court recognized that vexatious litigation might result but held that

> the concern with litigation in our immunity cases is not merely a generalized concern with interference with an official's duties, but rather is a concern with interference with the conduct closely related to the judicial process. Absolute immunity is designed to free the *judicial process* from the harassment and intimidation associated with litigation. That concern therefore justifies absolute prosecutorial immunity only for actions that are connected with the prosecutor's role *in judicial proceedings*, not for every litigation-inducing conduct.

500 U.S. at 494 (citations omitted) (second emphasis added).

Similar themes emerge in other immunity cases where the Court has asked whether the activity occurred while the prosecutor was engaged as an "advocate," or in a "prosecutorial function." *See Kalina*, 522 U.S. at 127 (citing *Mitchell v. Forsyth*, 472 U.S. 511 (1985) (noting that actions taken in "prosecutorial functions" are immune); *Buckley*, 509 U.S. at 273 ("The question, then, is whether the prosecutors have carried their burden of establishing that they were functioning as 'advocates.'"); *see also Nickerson v. Texas*, 209 F.3d 718, No. 99-402266, 2000 WL 283149, at *2 (5th Cir. Jan. 31, 2000) (unpublished table decision) ("Prosecutors are entitled to absolute immunity for their decisions to initiate a criminal prosecution and for their actions during the course of a prosecution."); *Hughes*, 948 F.2d at 922-23 ( "[T]he district attorney and

his assistant are not entitled to absolute immunity from suit arising from their giving legal advice to the Commissioners Court.").

In the present case, Lampton provided the tax records to the Commission after Diaz was acquitted. The prosecution was over; the conduct was neither part of his prosecutorial function nor part of his role as an advocate. Because the act was not intimately related to the judicial phase *of the criminal process*, which had already concluded, absolute prosecutorial immunity does not apply. *See Roderick v. City of Gulfport*, 144 F. Supp. 2d 622, 636-37 (S.D. Miss. 2000) (finding no prosecutorial immunity for refusal to return defendant's property post-trial); *Ray v. New Jersey*, 219 F. App'x 121, 124 (3d Cir. 2007) (finding prosecutorial immunity because alleged disclosure of criminal defendant's confidential information occurred in prosecutorial capacity). When "the prosecutorial function is not within the advocate's role and there is no historical tradition of immunity on which we can draw, our inquiry is at an end." *Buckley*, 509 U.S. at 278 (finding no absolute immunity for statements made during press conference).

Finally, Lampton suggests that prosecutorial immunity applies because he was required to file a complaint pursuant to Rule 8.3(b) of the Mississippi Rules of Professional Conduct. Rule 8.3(b) states that "[a] lawyer having knowledge that a judge has committed a violation of applicable rules of judicial conduct that raises a substantial question as to the judge's fitness for office shall inform the appropriate authority."[2] As an initial point, Lampton raised this argument for the first time in his Reply [48]. Ordinarily, the Court does not consider such delinquent

---

[2]Lampton has not addressed whether the rule would likewise require production of tax records in alleged violation of federal statutes.

arguments. *Gillaspy v. Dallas Indep. Sch. Dist.*, 278 F. App'x 307, 315 (5th Cir. 2008). Even if the Court were inclined to consider the argument, it would not change the result.

Lampton's only support for his Rule 8.3(b) argument is *Kalina v. Fletcher*, where the Court held that a prosecutor did not enjoy absolute immunity when serving as a complaining witness in support of a search warrant, "an act that any competent witness might have performed." 552 U.S. at 129-30. The Court then noted that, in acting as a witness, the prosecutor engaged in conduct "not prevalent" throughout the country, "not even mandated by law" in defendant's county, and generally contrary to "tradition, as well as the ethics of our profession." *Id.* at 130. Lampton seems to suggest that the inverse must therefore be true–if the conduct is ethically required, then absolute immunity attaches. This twist on *Kalina* ignores *Imbler*'s functional approach. Lampton may well have acted as a member of the bar, and there may be some immunities that would therefore attach. However, he based his motion solely on prosecutorial immunity, and he was not acting in a prosecutorial function when he provided the Diazes' tax and other financial records to the Commission post-acquittal. The act was not "intimately associated with the judicial phase," which had already concluded, and was not even part of the "criminal process." *Imbler*, 442 U.S. at 430.

Having reviewed the pleaded facts in light of authority, the Court concludes that Defendant Lampton failed to meet his burden of establishing a right to absolute prosecutorial immunity.[3]

---

[3]To clarify the precedential value of this opinion, the Court feels compelled to observe that this is a limited ruling. This order does not address potential arguments and other sources of immunity that were not raised in Lampton's memoranda. *See John Deere Co. v. Am. Nat'l Bank, Stafford*, 809 F.2d 1190, 1192 (5th Cir. 1987) (reversing summary judgment entered on grounds not raised).

### 2. *Derivative or Bystander Liability*

Jennifer Diaz alleges "[t]hat Dunnica Lampton brought libelous charges against Oliver Diaz . . . which ultimately caused and contributed to Jennifer Diaz's suffering . . . for which she is entitled to recover damages." J. Diaz's Third-Party Claim at 7, State Court Record [28] at 128. Mississippi law allows claims for bystander liability when someone observes an injury to a spouse. *Entex, Inc. v. McGuire*, 414 So. 2d 437, 444 (Miss. 1982). Lampton argues that liability does not attach here because "it is not even alleged that Jennifer and Oliver Diaz were married at the time these alleged 'libelous charges' were filed." D. Lampton Mem. [26] at 2.

It is important to note that Dunnica Lampton pursues dismissal under Rule 12(b)(6), under which the Court must view the well-pleaded facts in a light most favorable to Jennifer Diaz. *Martin K. Eby Constr. Co.*, 369 F.3d at 467 (quotation and citation omitted). Jennifer Diaz refers to Oliver Diaz as her husband at least five times throughout her answer, counterclaim, and third-party claim. *See* Def. Jennifer Diaz's Answer, Countercl., & Third-Party Claim at 2-3, 6, 10, State Court Record [28] at 123-24, 127, 131. Moreover, Jennifer Diaz's third-party claim is also based on the disclosure of her financial records and is therefore not solely derivative of Oliver Diaz's injury. *See* J. Diaz's Answer, Countercl., & Third-Party Claim at 8, State Court Record [28] at 129. For these reasons, Dunnica Lampton's motions to dismiss [25, 38, 90] should be denied.

### 3. *Related Motions*

Although Oliver Diaz filed a timely response to Lampton's motion, Jennifer Diaz filed her response [83] more than five months late, on December 18, 2009, without seeking leave of court to file a late response. Dunnica Lampton moved to strike the response [88], and again

Jennifer Diaz did not respond. The Court finds Dunnica Lampton's motion should be granted, but this has no impact on the Court's ruling. Under Uniform Local Rule 7(3)(E), which took effect before Lampton filed his motion to strike, a court may not grant dispositive motions as unopposed. *See also Johnson v. Pettiford*, 442 F.3d 917, 918 (5th Cir. 2006) (noting that the Fifth Circuit has not approved automatic grant of dispositive motions for failure to file a response). Accordingly, the Court considered the merits of the motion to dismiss.

Dunnica Lampton also moved to strike [47] portions of Oliver Diaz's response [44] to his motion to dismiss because they were based on factual assertions from hearsay newspaper articles. These articles suggest that Lampton was actually recused from Oliver Diaz's prosecution prior to the acquittal, thus supporting Diaz's argument that Lampton was not acting in a prosecutorial function. However, Lampton moved under Rule 12(b)(6), and the Court has not considered matters outside the pleadings. If converted to a Rule 56 motion, Lampton would be correct that hearsay is not competent summary judgment evidence. *Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005) (holding that newspaper articles constitute hearsay and are not proper summary judgment evidence). The motion to strike is therefore granted.

Oliver Diaz filed a motion for continuance and Rule 56(f) discovery [55] on Lampton's assertion of immunity. In light of the Court's ruling that Lampton is not entitled to absolute prosecutorial immunity, the motion to continue is moot.

On March 10, 2010, Jennifer Diaz filed an Addendum to Response to Motion to Dismiss and Motion to Impose Sanctions [95]. On March 24, Dunnica Lampton moved separately to strike the motion for sanctions for failure to comply with Local Rule 7(b)(3)(C) [97] and to strike

the entire addendum [101].  Both motions are meritorious.  In addition, Diaz never responded, and the motions are granted as unopposed under Local Rule 7(3)(E).

   B. <u>Leslie Lampton and Darlene Ballard's Motions</u>

  This suit began as a declaratory judgment action by Leslie Lampton based on immunity. Oliver Diaz and Jennifer Diaz both assert numerous counterclaims against Leslie Lampton and third-party claims against Darlene Ballard.  Leslie Lampton moved for summary judgment [58] on his original claim for declaratory judgment of immunity and on the Diazes' counterclaims against him.  Likewise, Darlene Ballard filed motions for summary judgment [34, 69] on the Diazes' claims against her.  In these motions, Leslie Lampton and Ballard assert that the Diazes have failed to state a claim against them and alternatively argue that, if a claim has been stated, then various forms of immunity apply.  The state and federal claims raise different issues and will be treated separately.

   1. *Federal Claims*

  Leslie Lampton and Ballard face claims that they violated federal law in the handling of the Commission's investigation.  More specifically, Jennifer Diaz claims that the production and procurement of the tax records violated § 6103, which gave rise to a violation of § 1983, § 1985, and § 7431.  Oliver Diaz limits his federal claims against Leslie Lampton and Ballard, asserting that they conspired with Dunnica Lampton to violate his federal rights.  Finally, the Diazes assert causes of action for misprision as to Ballard, and Jennifer Diaz asserts a claim for misprision against Leslie Lampton.  Lampton and Ballard contend that the Diazes have failed to state a federal claim against them and that the claims are otherwise precluded by various immunities.

For organizational purposes, this order will begin with qualified immunity analysis because it encompasses whether a statutory violation has been established.

a.      Qualified Immunity

"Qualified immunity offers a shield against civil liability for government employees 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wernecke v. Garcia*, 591 F.3d 386, 392 (5th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Courts use a two-step analysis to determine whether qualified immunity applies.  "[A] court addressing a claim of qualified immunity must determine first whether the plaintiff has adduced facts sufficient to establish a constitutional or statutory violation."  *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

Second, if a violation has been alleged, the court must determine "'whether [the officers'] actions were objectively unreasonable in light of clearly established law at the time of the conduct in question.'"  *Id.* (quoting *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007)).  "The defendant's acts are held to be objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff."  *Thompson v. Upshur County, TX*, 245 F.3d 447, 457 (5th Cir. 2001).  In this regard, the Fifth Circuit has explained that for

> qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances*.

*Sorenson v. Ferrie,* 134 F.3d 325, 330 (5th Cir. 1998) (citations omitted), *quoted in Kinney v. Weaver*, 301 F.3d 253, 289-290 (5th Cir. 2002).

When a defendant asserts qualified immunity, the plaintiff has the burden to rebut the defense. *Hampton v. Oktibbeha County Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007). "If the plaintiff fails to state a constitutional [or statutory] claim or if the defendant's conduct was objectively reasonable under clearly established law, then the government official is entitled to qualified immunity." *Id.* (citing *Easter v. Powell*, 467 F.3d 459, 462 (5th Cir. 2006)).

The Court will consider each of the Diazes' federal claims against Leslie Lampton and Ballard under the two-step analysis. As demonstrated below, the Diazes have failed to "establish a constitutional or statutory violation" as to many of their federal claims. *Collier*, 569 F.3d at 217. Moreover, none of the federal claims invoke "clearly established law at the time of the conduct in question." *Id.*

### i.     Liability Premised on 26 U.S.C. § 6103

The Diazes claim that Lampton and Ballard violated 26 U.S.C. § 6103(a), which requires the confidentiality of tax records in certain enumerated circumstances.[4] Section 6103 creates no

---

[4]Section 6103(a) states as follows:

(a) General rule.--Returns and return information shall be confidential, and except as authorized by this title–

    (1) no officer or employee of the United States,

    (2) no officer or employee of any State, any local law enforcement agency receiving information under subsection (i)(7)(A), any local child support enforcement agency, or any local agency administering a program listed in subsection (l)(7)(D) who has or had access to returns or return information under this section or section 6104(c), and

private right of action, but violations of that section can be pursued under § 7431, and Jennifer

Diaz has pled such a claim against Lampton and Ballard.  *See Hobbs v. United States*, 209 F.3d

408, 410 (5th Cir. 2000).  Jennifer Diaz further contends that the § 6103 violations trigger

liability under § 1983 and § 1985.  Section 1983 creates a federal cause of action for violation of

federal constitutional or statutory law by one acting under color of law.  42 U.S.C. § 1983.

Section 1985 precludes conspiracy to deprive someone of civil rights.  42 U.S.C. § 1985.  Like

Jennifer, Oliver Diaz brings a conspiracy claim against Lampton and Ballard premised on

§ 6103.[5]

To overcome qualified immunity, the Diazes must not only allege that Lampton and

Ballard violated § 6103 but also show a *clearly established* right under § 6103 and that Lampton

and Ballard's conduct was objectively unreasonable.  Lampton and Ballard insist that the Diazes

fail to meet this burden because Lampton and Ballard are not officers or employees of any state

who have received tax records under the limited circumstances specified in § 6103.  They further

---

(3) no other person (or officer or employee thereof) who has or had
access to returns or return information under subsection
(e)(1)(D)(iii), paragraph (6), (10), (12), (16), (19), or (20) of
subsection (l), paragraph (2) or (4)(B) of subsection (m), or
subsection (n),

shall disclose any return or return information obtained by him in any manner in
connection with his service as such an officer or an employee or otherwise or
under the provisions of this section. For purposes of this subsection, the term
"officer or employee" includes a former officer or employee.

[5]The parties dispute whether violation of § 6103 creates liability under § 1983 in light of
the enforcement provisions allowed in § 7431.  The Court found no cases deciding the issue, and
none have been cited.  Ultimately, the issue requires no resolution because the § 1983 claim
would be dismissed even if applicable.

observe that no reported cases find liability under this statute as to similarly situated defendants. This, they say, demonstrates that the right is not clearly established, if it exists at all.

The Diazes' responses to this argument ignore the full text of the statute and the arguments regarding its limited scope. They also fail to cite a single case demonstrating that the statute applies in this context. Instead, the Diazes rely on distinguishable authority and rhetoric. The Court's own research revealed no cases supporting the Diazes' interpretation of § 6103, and the Court finds that the Diazes have not pled facts sufficient to establish that the tax records were obtained in one of the limited circumstances outlined in § 6103. On this basis, the Diazes have further failed to carry their burden to show that the law or right allegedly violated was clearly established. *See Sorenson*, 134 F.3d at 328 ("Particularly in situations where–as here–the statutory language is vague, the case law must draw a bright line in order for the law to be classified as 'clearly established.'" (citation omitted)). Thus, even if the Diazes could state a claim under § 6103, Lampton and Ballard are protected by qualified immunity. As a result, claims under § 7431 are dismissed as are the § 1983 and § 1985 claims premised on alleged violation of § 6103.

### ii. *Section 1983 and 1985 Conspiracy Claims*

Lampton and Ballard also argue that the Diazes failed to state a claim of civil conspiracy under either § 1983 or § 1985. Again, to the extent these claims are premised on § 6103, they must fail. A plaintiff pursuing a § 1983 conspiracy claim "must establish the existence of a conspiracy and a deprivation of civil rights in furtherance of that conspiracy." *Thompson v. Johnson*, 348 F. App'x 919, 922-23 (5th Cir. 2009) (citing *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995)). Moreover, "'[a] person may not be prosecuted for conspiring to commit an act

that he may perform with impunity.'" *Mowbray v. Cameron County, Tex.*, 274 F.3d 269, 277

(5th Cir. 2001) (holding defendants cannot be liable for § 1983 conspiracy to commit an act for

which they are otherwise immune from suit) (quoting *House v. Belford*, 956 F.2d 711, 720 (7th

Cir. 1992)).  Here, § 6103 does not restrict Leslie Lampton and Ballard, and at a minimum, their

alleged conduct falls within their qualified immunity.  Accordingly, the Diazes fail to plead an

underlying federal violation upon which they may premise a § 1983 conspiracy against Leslie

Lampton or Ballard.

 In addition, a § 1985 claim requires proof of a "racial, or . . . class-based, invidiously

discriminatory animus." *Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 687 (5th Cir. 2010).

Oliver Diaz abandons this claim, and Jennifer Diaz concedes her failure to plead such an animus.

However, Jennifer states that discovery is necessary to develop the claim.  As discussed below, a

heightened pleading standard applies when immunity issues exist.  Discovery is not appropriate

unless the complaint "allege[s] facts that, if proven, would demonstrate that [the defendant]

violated clearly established statutory or constitutional rights." *Wicks v. Miss. State Employment

Servs.*, 41 F.3d 991, 995 (5th Cir. 1995).  The Diazes' counterclaims, third-party claims, and

Rule 7 Reply all fail to allege facts that would support a § 1985 claim.  *See generally*, Mots. For

Summ. J. [34, 58, 69].

It should be noted that Leslie Lampton and Ballard raised a number of other meritorious

legal arguments regarding the requirements for a public or a private conspiracy.  The Diazes

never explain whether the alleged conspiracy was public or private and largely ignore many of

Lampton and Ballard's arguments.  However, Oliver Diaz does make one argument that should

be addressed.  According to him, Lampton and Ballard conspired to deprive him of his

procedural due process rights in violation of § 1983.  The conspiracy claim in Diaz's initial

pleadings cited only § 1985 and spoke only of illegal disclosure of financial information, not of

procedural due process.  A party may not create new claims in response to a motion for summary

judgment.  *See Gomez v. LSI Integrated LP*, 246 F. App'x 852, 854 (5th Cir. 2007) (citing

*Roeder v. Am. Postal Workers Union, AFL-CIO*, 180 F.3d 733, 737 n.4 (6th Cir. 1999) (refusing

to consider on appeal unpled claim raised for the first time in response to a motion for summary

judgment)).  Even if such a claim had been pled and could be considered, Diaz does not specify

what procedure was lacking, and his answer concedes that the Commission "dismissed all

charges" against him.  O. Diaz's Answer, Countercl. & Third-Party Claim [33] ¶ 54.  Oliver Diaz

has failed to state a federal claim for civil conspiracy.

*iii.*     *Misprision Claim*

The Diazes' counterclaims and third-party claims fail to indicate whether their misprision

claims are federal, but both rely on 18 U.S.C. § 4 in subsequent submissions.  Section 4 is a

criminal statute that reflects no intent to provide a private cause of action.  Neither of the Diazes

offers any authority stating that § 4 creates a private cause of action, although Oliver Diaz

contends that the court has power to infer such a right.  The Court is not inclined to exercise that

power.  *See Apollo v. Peake*, 306 F. App'x 584, 586-87 (Fed. Cir. 2009) ("We are aware of no

authority for the proposition that an alleged violation of the federal misprision of felony statute

gives rise to a private right of action."); *Powell v. Galveston Indep. Sch. Dist.*, No. G-06-415,

2006 WL 2239097, at *4 (S.D. Tex. Aug. 1, 2006) (finding no private right of action for

violation of 18 U.S.C. § 4).  Even if the right to a private cause of action could be inferred, it is

not clearly established and qualified immunity would exist.

20

b.    Absolute Immunity

Leslie Lampton and Ballard also contend that they are entitled to absolute quasi-judicial immunity.  This argument becomes redundant given the finding of qualified immunity.  However, the Court will quickly address this issue.

First, the Commission is an "integral part[] of the judicial process."  *Sparks v. Character & Fitness Comm. of Ky.*, 859 F.2d 428, 430 (5th Cir. 1988); *see Miss. Comm'n on Judicial Performance v. Martin*,  995 So. 2d 727, 730 n.2 (Miss. 2008) ("As an integral part of the judicial branch of government, the Supreme Court sets the procedural rules governing the Commission.").  Second, the work of the Commission is sufficiently judicial in nature to warrant absolute immunity.  The following six factors apply:

> (1) the need to assure that the individual can perform his functions without harassment or intimidation; (2) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (3) insulation from political influence; (4) the importance of precedent; (5) the adversary nature of the process; and (6) the correctability of error on appeal.

*O'Neal v. Miss. Board of Nursing*, 113 F.3d 62, 65 (5th Cir. 1997) (citing *Cleavinger v. Saxner*, 474 U.S. 193, 202 (1985); *Butz v. Economou*, 438 U.S. 478, 512 (1978)).  Starting with factor (2), Mississippi provides adequate safeguards.  *See* Miss. Code Ann. § 9-19-11; Rules of the Miss. Comm'n on Judicial Performance; Miss. Const. art. 6, § 177-A.  The remaining factors are all crucial when discussing alleged misconduct by an elected judge.  Accordingly, each factor supports finding that Lampton and Ballard are entitled to immunity from federal damages suits arising from their performance of the functions of the Commission.[6]  Because the federal claims

---

[6]Although there is scant case law on quasi-judicial immunity for judicial ethics commissions, the U.S. Supreme Court and the Fifth Circuit have repeatedly held that state bar disciplinary committees have an "essentially judicial nature."  *See, e.g.*, *Middlesex County Ethics*

relate to the Commission's investigation, they are subject to absolute immunity. Given the ruling on qualified immunity, the Court declines to write further on this issue, but it has considered and rejected all of the Diazes' arguments to the contrary.

2. *State Law Claims*

The Diazes alleged numerous state law claims against Leslie Lampton and Ballard. The allegations as pled relate to Lampton and Ballard's participation in the Commission's investigation and Lampton's decision to file a declaratory judgment action that revealed to the public that an investigation had been conducted. As to the former, Lampton and Ballard are immune. As to the declaratory judgment action, no immunity exists.

Mississippi has provided immunity for the work of the commission as follows:

All complaints filed pursuant to the provisions of this chapter shall be absolutely privileged. The commission on judicial performance, its members, executive director, commission counsel, master or fact finder, and their assistants, staff and employees shall be immune from civil suit for any conduct arising out of the performance of their official duties.

Miss. Code Ann. § 9-19-29. This statute has never been applied in any reported decision and must be construed. In making this *Erie*-guess, the Court must discern the intent of the

---

*Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 434 n.13 (1982) (abstaining from review of committee's decision); *Carr v. Calogero*, 987 F.2d 772, No. 92-3384, 1993 WL 67171, at *1 (5th Cir. Mar. 4, 1993) (unpublished table decision) (citing *Slavin v. Curry*, 574 F.2d 1256, 1266 (5th Cir. 1978)) (affirming dismissal of suit against members of Louisiana bar association disciplinary board based on absolute immunity). Moreover, a pair of decisions from other jurisdictions have applied quasi-judicial immunity to state judicial ethics commissions. *See Dobronski v. Arizona*, 128 F. App'x 608, 609 (9th Cir. 2005) (affirming dismissal of individual capacity claims against members of the Arizona Commission on Judicial Conduct based on quasi-judicial immunity); *Salman v. State of Nev. Comm'n on Judicial Discipline*, 104 F. Supp. 2d 1262, 1268 (D. Nev. 2000) (holding that individual-capacity claims against members and employees of state commission on judicial discipline are barred by absolute quasi-judicial immunity).

Legislature, and "[w]hatever the Legislature says in the text of the statute is considered the best evidence of the legislative intent." *Miss. Dep't of Transp. v. Allred*, 928 So. 2d 152, 155 (Miss. 2006). Here, the Legislature spoke in terms of absolute privilege and immunity from suit for any conduct arising out of the performance of official duty. This language reflects an intent to provide broad immunization. As discussed below, analogous authority suggests that the immunity would extend to acts reasonably related to official duties.

Although no Mississippi court has ever addressed section 9-19-29, the Mississippi Supreme Court has interpreted immunity for bar disciplinary proceedings under common law and under section 73-3-345 of the Mississippi Code, which is worded similarly to section 9-19-29.[7] In *Netterville v. Lear Siegler, Inc.*, the court considered a claim for immunity under section 73-3-345 and noted the need for robust immunity for all involved in disciplinary proceedings. 397 So. 2d 1109, 1112 (Miss. 1981) ("We regard it as important . . . that there should be no impediment to free criticism of the bench and bar lest it be interpreted by the public as a veil to hide judicial vices."). *Netterville* then observed that, under common law, immunity exists where the statements are "reasonably related to the judicial inquiry." *Id*. at 1112. The Court concluded that under common law and section 73-3-345, "[a]ny person or legal entity filing such complaint

_____

[7]Section 73-3-345 states in relevant part as follows:

All complaints filed pursuant hereto shall be absolutely privileged, and no lawsuit predicated thereon may be instituted . . . . The board of commissioners, the committee on complaints, the executive director, the complaint counsel, the complaint tribunals, and their assistants, staff and employees shall be immune from civil suit for any conduct arising out of the performance of their official duties. Every person shall be immune from civil suit for all of his sworn or written statements made or given in the course of any investigation, investigatory hearing, formal hearing or review proceedings held and conducted under these disciplinary rules.

shall be immune from any civil suit predicated thereon, so long as the statements are made within the course and framework of the disciplinary process and are reasonably relevant to the complaint." *Id.* at 113. *Netterville* offers the closest available analogy and indicates that the Mississippi Supreme Court would provide absolute immunity for all actions that are reasonably related to the Commission's investigation.

That said, *Netterville* also explains the outer limits of such immunity. Significantly for the present case, the court observed that not all statements related to the inquiry are privileged.

> Having held that the complaint filed was absolutely privileged, the next question presented is whether the immunity from suit accorded such privilege extends to one who thereafter maliciously publishes and causes said complaint or information contained therein to be circulated about the State of Mississippi to persons not authorized by the statute and regulations to receive same. We think not.

*Id.* at 1113.

Similarly, in *Roussel v. Robbins*, the court refused to extend absolute immunity beyond the contours of the disciplinary proceeding. 688 So. 2d 714 (Miss. 1996). In that case, a land owner named Roussel filed a bar complaint against an attorney named Robbins. When the bar complaint was dismissed, Roussel filed a state court claim against Robbins re-urging the ethical complaints that were rejected during the disciplinary proceeding. Robbins then filed a counterclaim based on various state law theories, including malicious prosecution. The Mississippi Supreme Court rejected Roussel's argument that he was immune from liability, noting that

> Robbins' counterclaims were not "predicated on disciplinary proceedings," nor were they part of a lawsuit "instituted" on the basis of a bar complaint. Rather, Robbins' counterclaims were predicated on the claims made by Roussel in the suit he filed in the Rankin County Circuit Court. Had Robbins filed a suit against Roussel solely on the basis of Roussel's bar complaint, Roussel might have a

valid claim to immunity under the statute. However, after the bar complaint was dismissed, Roussel chose to pursue his claims against Robbins in court. Roussel, not Robbins, instituted the suit, and such action brought Roussel outside the scope of immunity provided by § 73-3-345.

*Id*. at 721 ("[H]aving initiated a lawsuit against Robbins in Circuit Court, Roussel enjoyed no immunity to such counterclaims.").

*Netterville* and *Roussel* can be distinguished to some extent, but both observe the paramount need to provide absolute immunity to those who participate in disciplinary proceedings, and both indicate that the immunity expires when the participant acts in a way that exceeds the scope of those proceedings.

Turning to the facts at hand, the Diazes generally concede, and the Court finds, that Lampton and Ballard fall under the protection of the statute and are immune from any state law claims arising from the performance of their official duties.[8] A review of the Diazes' pleadings reveals that all of the factual averments and causes of action against Ballard relate to steps she took in her role as an attorney for the Commission in relation to the Diaz investigation. As a matter of law, all of the alleged conduct arose out of the performance of her official duties, and for this she is "immune from civil suit . . . ." Miss. Code Ann. § 9-19-29. All state law claims against Ballard are therefore dismissed.[9]

---

[8]The Court rejects Jennifer Diaz's contention that refusing to return the documents and then later returning them to Dunnica Lampton constitutes criminal misprision in violation of 18 U.S.C. § 4 that somehow waives Leslie Lampton and Darlene Ballard's state law immunity. The federal misprision statute is a criminal statute, and Mrs. Diaz does not explain how this affects state law immunity. Also lacking is the argument that the Commission acted without jurisdiction.

[9]Ballard asserts that Oliver Diaz failed to comply with the notice of claim requirements of the Mississippi Tort Claims Act, § 11-46-11, and that pursuant to § 11-46-7 she cannot be held liable for "acts or omissions occurring within the course and scope of [her] duties." Diaz

25

The same analysis produces the same result as to all state claims against Leslie Lampton, except those related to the filing of the declaratory judgment action. When Lampton filed the declaratory judgment action, he did so in his individual capacity and not as a member of the Commission. Filing the suit was an act that appears to fall beyond the Commission's charge, and divulging details of a Commission investigation, unless it results in punishment, is beyond a Commission member's official duties. *See* Miss. Const. art. 6, § 177-A ("All proceedings before the commission shall be confidential, except upon unanimous vote of the commission."); Miss. Code Ann. § 9-19-19 ("All commission members, staff, witnesses or any other person privy to any hearing before the commission shall take an oath of secrecy concerning all proceedings before the commission, violation of which shall be punishable as contempt."); Rules of the Miss. Comm'n on Judicial Performance 4 (governing confidentiality of "[a]ll proceedings" and "all records, files and reports," violation of which is punishable by termination).

Lampton nevertheless argues that the filing of the declaratory judgment action arose from the performance of his official duties and he is therefore immune under section 9-19-29. Cases such as *Netterville* and *Roussel* suggest that his argument falls short. *Roussel*, 688 So. 2d at 721 ("[H]aving initiated a lawsuit against Robbins in Circuit Court, Roussel enjoyed no immunity to such counterclaims."); *Netterville*, 397 So. 2d at 1112 (finding no immunity for publication of confidential information outside context of disciplinary proceeding).

In addition, the express language of the statute will not support his claim to immunity. Section 9-19-29 provides immunity "from civil suit *for any conduct* arising out of the

---

contests the issue, but because Ballard is immune from state law claims under § 9-19-29, *supra*, the Court finds it unnecessary to reach the Mississippi Tort Claims Act issues.

performance of their official duties."  Miss. Code Ann. § 9-19-29 (emphasis added).  This portion of the Diazes' civil suits is not for "conduct arising out of" Lampton's performance of official duty.  It is for his decision to individually file a civil declaratory judgment action.  The complained of conduct was not taken on behalf of the Commission and does not appear to be condoned by statute or the Commission's rules.  The Court finds that the Diazes' civil suits are not for conduct arising out of Lampton's performance of his official duties.  Accordingly, state-law privacy and confidentiality claims premised on Leslie Lampton's declaratory judgment action are not subject to immunity.

        3.     *Remaining Motions*

          a.     Motion for Continuance

In response to Darlene Ballard's motion for summary judgment, Jennifer Diaz moved for a continuance and discovery under Rule 56(f) [40].  Oliver Diaz suggests in a response to Ballard that he too sought continuance, citing the motion [55] he filed as to Dunnica Lampton's motion to dismiss.  He did not file a separate motion as to Ballard.

Although Rule 56(f) motions "are broadly favored and should be liberally granted," *Culwell v. City of Fort Worth*, 468 F.3d 868, 871 (5th Cir. 2006), "[t]he decision to grant or deny a Rule 56(f) motion is within the sound discretion of the district court," *Johnson v. Hinds County, Miss.*, 237 F.3d 632, No. 00-60098, 2000 WL 1701835, at *1 (5th Cir. Nov. 3, 2000) (unpublished table decision).  The rule "may not be invoked by the mere assertion that discovery is incomplete; the opposing party must demonstrate how the additional time will enable him to rebut the movant's allegations of no genuine issue of material fact."  *Leatherman v. Tarrant*

*County Narcotics Intelligence & Coordination Unit*, 28 F.3d 1388, 1396 (5th Cir. 1994) (quotation marks and citation omitted).

The Diazes fail to meet this burden. The motions for additional discovery appear to relate exclusively to the federal claims, and more particularly to the claim of absolute immunity.[10] As noted above, the Diazes' federal claims are due to be dismissed as a matter of law and for failure to overcome qualified immunity. The Diazes have not even attempted to show how additional discovery will somehow demonstrate that Lampton and Ballard are subject to § 6103, which is a purely legal question. The Diazes have likewise failed to demonstrate how additional facts would allow them to overcome the claim of qualified immunity. As a result, there is no basis for continuance.

Jennifer Diaz primarily contends that Defendants offer a circular argument in demanding specific pleadings while opposing discovery. Her argument fails to account for the rule that "the defense of qualified immunity as an immunity from suit, which extends beyond just a defense to liability to include all aspects of civil litigation." *Jacquez v. Procunier,* 801 F.2d 789, 791 (5th Cir. 1986) (citations and quotations omitted). As such, a stricter pleading requirement applies, and limited discovery occurs only "[w]here a plaintiff's pleadings assert facts which, if proven, would defeat a qualified immunity defense . . . ." *Geter v. Fortenberry*, 849 F.2d 1550, 1554 (5th Cir. 1988). "[U]ntil resolution of the threshold question of the application of an immunity defense, discovery should not be allowed." *Nieto v. San Perlito Indep. Sch. Dist.*, 894 F.2d 174, 178 (5th Cir. 1990) (internal quotation omitted). Finally, "[u]nless the plaintiff's allegations

---

[10]To the extent the motions can be read to encompass the state claims, they similarly fail because the allegations of the Complaint that have been dismissed all relate to actions that are subject to absolute immunity under statutory law.

state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to a dismissal before the commencement of discovery." *Id.*; *see also Wicks*, 41 F.3d at 996 (noting heightened pleading standards for claims of immunity and holding that, because plaintiff "failed to meet the threshold pleading requirements for either of his claims, . . . any discovery by Wicks, even that limited in scope, is improper"); *Largent v. City of Dallas*, 44 F.3d 1004, No. 94-10520, 1995 WL 10516, at *4 (5th Cir. Jan. 3, 1995) (holding that "[d]iscovery should not be allowed until the court resolves the threshold question whether the law was clearly established at the time the allegedly unlawful action occurred" and [t]he question is purely legal, and a court cannot avoid answering the question by framing it as factual").

Neither the counterclaim, third-party complaint, nor the amended third-party complaint demonstrates a defense to qualified immunity (assuming Diaz can even state a claim upon which relief may be granted). Moreover, Diaz was ordered to submit a Rule 7 reply to address "with particularity the specific facts which, if true, would overcome the immunity defenses raised by Leslie Lampton and Darlene Ballard." July 29, 2009 Order [30]. Diaz's Reply [31] failed to adequately do so. No discovery is appropriate under these circumstances.

Ultimately, the Diazes have not suggested that discovery might demonstrate a violation of § 6103, which forms the basis of their derivative federal claims. In addition, they have not alleged the sort of animus that would allow a § 1985 conspiracy claim, even if an underlying claim could be demonstrated. The Diazes' pleas for discovery must be denied. *See Nieto,* 894 F.2d at 177-78.

b. Motion to File Surreply

Although Jennifer Diaz filed no response specific to the motions for summary judgment, she did provide the Court with her legal responses to those motions when she filed her Reply [53] in support of continuance. However, this deprived Ballard of an opportunity to have the last word on her motion for summary judgment, and she therefore sought leave to file a surreply [54]. Diaz never responded, and the motion [54] is granted as unopposed and otherwise meritorious.

IV. **Conclusion**

As the length of this order reflects, the parties raised numerous issues in their many motions. Although not all arguments have been specifically addressed, all were seriously considered. Those arguments excluded from this order would not have changed the ruling.

For the reasons stated above, Third-Party Defendant Dunnica Lampton's motions to dismiss [25, 38, 90] are denied; his motion to strike [47] portions of Oliver Diaz's response is granted; his motion to strike Jennifer Diaz's late-filed response [88] is granted; his motion to strike Jennifer Diaz's motion to impose sanctions [97] is granted; and his motion to strike Jennifer Diaz's addendum [101] is granted.

Third-Party Defendant Darlene Ballard's motions for summary judgment [34, 69] are granted, and all the Diazes' claims against Darlene Ballard are dismissed with prejudice. Ballard's motion for leave to file surreply [54] is granted.

Defendant/Counterclaimant/Third-Party Plaintiff Jennifer Diaz's motion to continue [40] and Defendant/Counterclaimant/Third-Party Plaintiff Oliver E. Diaz Jr.'s motion to continue [55] are both denied.

Plaintiff/Counter-Defendant Leslie Lampton's motion for summary judgment [58] is granted as to his own claim for declaratory judgment and granted as to all the Diazes' claims except those state-law claims based on his filing a declaratory judgment action. The rest of the Diazes' claims are dismissed with prejudice.

Finally, the stay in this case is lifted and the remaining parties are directed to contact Magistrate Judge Parker to set an in-person case management conference to occur no later than May 28, 2010.

**SO ORDERED** this the 7th day of May, 2010.

s/ <i>Daniel P. Jordan III</i>      <br>
UNITED STATES DISTRICT JUDGE