**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

| | |
|---|---|
| **OLIVER E. DIAZ, JR.; JENNIFER DIAZ** | **PLAINTIFFS** |
| **V.** | **CAUSE NO. 3:09-CV-324-CWR-MTP** |
| **ESTATE OF DUNNICA O. LAMPTON** | **DEFENDANT** |

<u>**ORDER**</u>

Before the Court is the defendant's motion to dismiss. Docket No. 204. The plaintiffs have responded, Docket No. 210, and the defendant has replied, Docket No. 211.

After considering the allegations, arguments, and applicable law, the Court concludes that (1) the Diazes' federal claims should be dismissed with prejudice for failure to state a claim, and (2) the Diazes' state law claims should be dismissed without prejudice to allow a state court of competent jurisdiction to resolve novel and complex issues of state law.

**I.      Background**

This case has a lengthy history which is well-explained in prior Orders by this Court and two opinions by the Fifth Circuit Court of Appeals. *See* Docket Nos. 103, 199, 209; *Lampton v. Diaz*, 661 F.3d 897 (5th Cir. 2011) [hereinafter *L. Lampton*]; *Lampton v. Diaz*, 639 F.3d 223 (5th Cir. 2011) [hereinafter *D. Lampton*]. What remains is Oliver and Jennifer Diaz's claim that the Estate of Dunnica "Dunn" O. Lampton is liable to them for Dunn Lampton's unauthorized distribution of their confidential tax information to the Mississippi Commission on Judicial Performance. Docket No. 209, at 1.

Oliver Diaz's causes of action are "abuse of process, malicious prosecution, emotional distress, invasion of privacy, and 42 U.S.C. § 1983 (based upon Lampton's alleged violations of 18 U.S.C. § 1905, 26 U.S.C. § 6103, and 26 U.S.C. § 7213)." *Id.* Jennifer Diaz's causes of action are abuse of process, invasion of privacy, civil conspiracy, misprision, the tort of outrage, violations of 42 U.S.C. §§ 1983 & 1985, as well as violations of 26 U.S.C. §§ 6103 and 7431. *Id.*

Dunn Lampton had previously sought dismissal of the Diazes' claims on the basis of absolute prosecutorial immunity. Docket No. 199, at 2. That motion was denied and the Fifth Circuit affirmed. *Id.*; *D. Lampton*, 639 F.3d at 229. His Estate has now moved to dismiss on other grounds.

## II.     Legal Standards

### A.     Motions to Dismiss

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court accepts the plaintiff's factual allegations as true and makes reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must contain "more than an unadorned, the defendant-unlawfully-harmed-me accusation," but need not have "detailed factual allegations." *Id.* (quotation marks and citation omitted). The plaintiff's claims must also be plausible on their face, which means there is "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The Court need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* (citation omitted).

Since *Iqbal*, the Fifth Circuit has stated that the Supreme Court's "emphasis on the plausibility of a complaint's allegations does not give district courts license to look behind those allegations and independently assess the likelihood that the plaintiff will be able to prove them at trial." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 803 n.44 (5th Cir. 2011).

### B.     Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation marks and citation omitted). "This immunity protects all but the plainly incompetent or those who knowingly violate the law, so we do not deny immunity unless existing precedent must have placed the statutory or constitutional question beyond debate." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc) (quotation marks, citations, and emphasis omitted).

"When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense. To discharge this burden, a plaintiff must satisfy a two-prong test." *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005) (quotation marks and citations omitted). At the dismissal stage, a court must first "decide whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional [or statutory] right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at

the time of defendant's alleged misconduct."[1] *Pearson*, 555 U.S. at 232 (citations omitted). "[T]he question whether the right was clearly established at the time the defendant acted requires an assessment of whether the official's conduct would have been objectively reasonable at the time of the incident." *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc) (quotation marks, citation, and ellipses omitted).

## III.   Discussion

### A.   Service of Process

A threshold issue is whether the Diazes properly brought Dunn Lampton into this case. The Estate contends that the Diazes' filing of a third-party complaint against Dunn Lampton violated Mississippi Rule of Civil Procedure 14 and Mississippi case law. Docket No. 205, at 8-9. The Diazes respond that this argument should have been presented in Dunn Lampton's first motion to dismiss, which was filed in this Court in September 2009. Docket No. 210, at 10.

Under the Federal Rules of Civil Procedure, a party waives the defenses of lack of personal jurisdiction, improper venue, insufficient process, and insufficient service of process by omitting those defenses "from a motion in the circumstances described in Rule 12(g)(2)." Fed. R. Civ. P. 12(h)(1)(A). Rule 12(g)(2) states that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." *Id.* at 12(g)(2).

In other words, the Rule requires lack of personal jurisdiction, improper venue, insufficient process, and insufficient service of process to be raised in a party's first motion to dismiss. *E.g.*, *Golden v. Cox Furniture Mfg. Co.*, 683 F.2d 115, 118 (5th Cir. 1982) (concluding that the defendant waived its service of process and personal jurisdiction arguments by failing to include them in its answer and motion to transfer).

In September 2009, Lampton moved to dismiss on the basis of absolute prosecutorial immunity. Docket No. 39. His brief did not raise a problem with service of process. *Id.*; *see also* Docket Nos. 26, 90. Under the Federal Rules of Civil Procedure, his failure to assert the defense of insufficient service of process at that time means his Estate cannot raise it now.

### B.   The Estate's Immunity Defenses

---

[1] The analysis need not be conducted in that order. *Pearson*, 555 U.S. at 236.

The Estate next contends it is entitled to a number of immunities under Mississippi and federal law, including Mississippi Code § 9-19-29, Mississippi Rule of Professional Conduct 8.3, and qualified immunity. Docket No. 205. The Diazes respond that the Estate has waived all of its immunity-based defenses by failing to raise them in its September 2009 motion to dismiss. Docket No. 210, at 2-5. The Diazes claim to have been prejudiced by that delay, since they have been denied discovery for over three years, may have to defend a second interlocutory appeal at the motion to dismiss stage, and will not have a trial on the merits in any reasonable timeframe. *Id.*

The Diazes have cited a Sixth Circuit case which found that "a failure to assert the defense [of qualified immunity] in a pre-answer motion to dismiss waives the right to raise the issue in a second *pre-answer* motion to dismiss." *English v. Dyke*, 23 F.3d 1086, 1090 (6th Cir. 1994) (citation omitted). "Moreover, the trial court has discretion to find a waiver if a defendant fails to assert the defense within time limits set by the court or if the court otherwise finds that a defendant has failed to exercise due diligence or has asserted the defense for dilatory purposes." *Id.* The Diazes argue that such a waiver policy "would not waive the defense for all purposes, but would generally only waive the defense for the stage at which the defense should have been asserted." Docket No. 210, at 2 (citation omitted).

At the same time, the Diazes recognize that the law of the Fifth Circuit is different. *Id.* at 3-4 (citing *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572 (5th Cir. 2009)). In *Knoblauch*, the Fifth Circuit held that an affirmative defense such as qualified immunity "is not waived if the defendant raised the issue at a pragmatically sufficient time, and the plaintiff was not prejudiced in its ability to respond." *Knoblauch*, 566 F.3d at 577 (quotation marks, citation, and brackets omitted). It instructed that courts are to "look at the overall context of the litigation" and observed that it has "found no waiver where no evidence of prejudice exists and sufficient time to respond to the defense remains before trial." *Id.* (collecting cases).

On one hand, Lampton's failure to prepare a complete motion to dismiss in September 2009 has led to a considerable delay in this case, caused primarily by his pursuit of an interlocutory appeal on absolute immunity. During that time period, he passed away. The Diazes have been prejudiced not just because of the delay, but also because they were denied the opportunity to depose Lampton before his (untimely) death. That delay could have been avoided had Lampton briefed all of his arguments for dismissal in his first motion.

4

And yet the Diazes' arguments for waiver are ultimately not persuasive. First, because the dispute between these parties truly is at its earliest stages, the Diazes are not prejudiced in their ability to respond to the Estate's immunity defenses. Although the case was filed in 2009, the Estate has not filed an answer and no discovery has been conducted. In the overall context of the litigation, "sufficient time to respond to the defense remains before trial." *Id.*

Second, even if this Court found the Estate to have waived its immunity defenses at this stage, the Estate would immediately appeal the resulting denial of qualified immunity, causing the very delay the Diazes seek to avoid.[2]

Third, accepting the Diazes' waiver argument would permit the parties to engage in discovery. But authorizing discovery is inconsistent with one of the core goals of immunity: to minimize public officials' exposure to litigation as early as possible. *See Pearson*, 555 U.S. at 231 ("[T]he driving force behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials will be resolved prior to discovery. Accordingly, we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.") (quotation marks, citations, and brackets omitted); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) ("The entitlement is an immunity from suit rather than a mere defense to liability"). In other words, the purpose of qualified immunity is in conflict with a waiver policy which allows discovery to occur before considering the merits of an immunity motion.

If there is no waiver rule, a defendant could theoretically attempt to string out its immunity defenses in numerous motions, potentially resulting in a series of interlocutory appeals.[3] And yet if an otherwise-meritorious immunity motion is deemed waived at the motion to dismiss stage, the resulting discovery that occurs before summary judgment is granted will have been a waste of time and money.

On balance, the Court will decline to apply the Sixth Circuit's waiver rule. Although the Diazes have been prejudiced by the passage of time and by Lampton's death, the Estate has not

---

[2] Assume that this Court adopted the Diazes' waiver argument and was affirmed on appeal. That would be the second interlocutory appeal in this case. Later, after discovery, the Estate would be entitled to reassert qualified immunity at the summary judgment stage – leading to a third interlocutory appeal if summary judgment was denied. Even if that conclusion were affirmed, we still would have a trial and *fourth* (final) appeal. It seems unwise to start down this path when qualified immunity can be taken up today.

[3] A litigant who engages in dilatory or abusive tactics risks sanctions, of course.

waived its immunity arguments.

The Court will now move on to consider the Diazes' federal claims.

**C.      The Federal Claims**

The Estate has advanced a number of arguments challenging the Diazes' federal claims, including arguments that 18 U.S.C. § 1905 does not apply here, that Lampton did not violate 26 U.S.C. § 6103, that any remedy lies solely against the United States, and that it is entitled to qualified immunity. Docket No. 205, at 9-22. In response, the Diazes contend that Lampton's liability under federal law has already been conclusively determined by the Fifth Circuit in an interlocutory appeal, making it the law of the case, and that they have stated a claim for relief under § 1983 sufficient to overcome qualified immunity. Docket No. 210, at 6-16.

**1.      Law of the Case**

"The law of the case doctrine, as formulated in this circuit, generally precludes reexamination of issues of law or fact decided on appeal, either by the district court on remand or by the appellate court itself on a subsequent appeal." *Alpha/Omega Ins. Servs., Inc. v. Prudential Ins. Co. of Am.*, 272 F.3d 276, 279 (5th Cir. 2001) (quotation marks and citation omitted).

"Importantly, the law of the case doctrine applies only to issues that were actually decided, rather than all questions in the case that might have been decided, but were not." *Lindquist v. City of Pasadena Tex.*, 669 F.3d 225, 238-39 (5th Cir. 2012) (quotation marks and citation omitted). "[E]ven when issues have not been expressly addressed in a prior decision, if those matters were fully briefed to the appellate court and . . . necessary predicates to the court's ability to address the issue or issues specifically discussed, those issues are deemed to have been decided tacitly or implicitly, and their disposition is law of the case." *Alpha/Omega*, 272 F.3d at 279 (quotation marks, citation, and brackets omitted).

The sole issue the Fifth Circuit considered during Dunn Lampton's interlocutory appeal was whether he was entitled to absolute prosecutorial immunity. *D. Lampton*, 639 F.3d at 225. We know this because it wrote at the beginning of its decision that the issue before the court was "whether . . . absolute immunity extends to a prosecutor's post-trial transfer of private federal tax records to a state ethics commission," and also because it then proceeded to discuss at length the common law roots of absolute immunity. *Id.*

Therefore, when that court found that a prosecutor can use information in his possession

6

"only to fulfill his duties as a prosecutor, and Lampton's actions went well beyond those bounds," it meant that Lampton exceeded the boundaries of conduct *protected by absolute immunity*. It did not conclusively determine that Lampton's actions violated federal law.

It is true that the Fifth Circuit's opinion contains several quotes which appear to be favorable to the Diazes' case, such as "[a] prosecutor does not have *carte blanche* to do as he pleases with the information he can access," and "Lampton could have reported Diaz's misconduct without releasing the tax records, so his ethical duty did not compel violation of the federal statute." *Id.* at 227-28. The latter quote in particular implies that Lampton violated federal law. Under the applicable standard of review, though, the Fifth Circuit had to accept the Diazes' allegations as true for the purposes of the interlocutory appeal. *See id.* at 225 ("In determining immunity, we accept the allegations of respondent's complaint as true.").

Also important is the Fifth Circuit's caveat that it "assume[d], *without deciding*, that the Diazes' allegations state a cause of action under § 1983." *Id.* (emphasis added). Because that issue was left for another day, the law of the case doctrine is unavailing. *See E.E.O.C. v. Houston Funding II, Ltd.*, No. 12-20220, 2013 WL 2360114, at *4 (5th Cir. May 30, 2013) (Jones, J., concurring in the judgment) ("When this court states that it 'does not reach' an issue in order to resolve a case under a narrower test, or when it assumes arguendo that a claim is cognizable, only to reject that the facts pled support the claim, such rulings do not implicitly reach or rule on the pretermitted issue.").

The appellate court's holding can be summarized as follows: assuming that Lampton violated federal law by disclosing confidential tax records to a state ethics commission, he would not be entitled to absolute immunity because that conduct exceeds the absolute immunity afforded prosecutors at common law. No conclusive factual finding of illegal conduct was made. No such finding could have been made, in fact, at that early juncture.

As a result, the law of the case doctrine does not prevent this Court from determining whether Lampton violated federal law or whether the Diazes have stated a claim under § 1983. The Court will take up the merits of the Estate's motion to dismiss.

### 2.      The Merits

The Diazes' response brief does not address many of the Estate's arguments for dismissal of their federal causes of action. The causes of action they failed to defend, such as Jennifer Diaz's 42 U.S.C. § 1985 claim, are dismissed as abandoned. *See United States ex rel. Woods v.*

*SouthernCare, Inc.*, No. 3:09-CV-313, 2013 WL 1339375, at *7 (S.D. Miss. March 30, 2013).

The Diazes, however, devoted several pages to arguing that their § 1983 claim was adequately pled and that qualified immunity was inappropriate at this juncture. Docket No. 210, at 11-16. That claim has been preserved for full consideration.

A review of the Diazes' arguments reveals one concern and one problem with their § 1983 theory.

### a.    Section 1983 does not apply to Lampton

The concern is that a § 1983 claim may only be brought against state officials. "Section 1983 provides a claim against anyone who under color of any statute, ordinance, regulation, custom, or usage, of any State violates another's constitutional rights." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 464 (5th Cir. 2010) (quotation marks and citations omitted). "A person acts under color of state law if he misuses power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.*

As United States Attorney for the Southern District of Mississippi, Lampton was a federal official when he sent the Diazes' tax records to the Mississippi Commission on Judicial Performance, not a state official, so he cannot be held liable under § 1983. And while federal officials can be sued for violating constitutional or federal statutory rights, that liability occurs through a *Bivens* action, which the Diazes have not brought.

Nevertheless, "the constitutional torts authorized by each are coextensive," and courts "do not distinguish . . . between *Bivens* claims and § 1983 claims." *Izen v. Catalina*, 398 F.3d 363, 367 n.3 (5th Cir. 2005) (citations omitted). For that reason it may be possible to set aside the Diazes' procedural error and move onto the substantive analysis. The Court will do so in the interests of finally resolving the federal claims.

For simplicity's sake, it also will refer to this claim as one brought under § 1983, notwithstanding that it probably should have been captioned as a *Bivens* action.

### b.    Section 1983 is not the correct remedy

The problem begins with the Diazes' brief's ambiguity about which constitutional provision or federal statute Lampton violated in distributing their tax records. Here is the clearest answer they give, as excerpted from their qualified immunity argument:

> It is well settled that a government employee's disclosures of tax returns

8

> constitute violations of federal law. "[D]isclosures are authorized only pursuant to a written request or consent." *Huckaby v. U.S. Dept. of the Treasury*, 794 F.2d 1041, 1044 (5th Cir. 1986). A disclosure unauthorized by Section 6103, therefore, constitutes a violation of clearly established law.

Docket No. 210, at 15.

The last sentence suggests that the underlying violation was of 26 U.S.C. § 6103. That statute, "applicable only to certain individuals who in connection with their government-related duties obtain tax return information, enjoins them not to disclose any of it so obtained, even though it is not private and not intimate or embarrassing and is of public concern." *Johnson v. Sawyer*, 47 F.3d 716, 735-36 (5th Cir. 1995) (en banc) [*Johnson I*]. "This general ban on disclosure provides essential protection for the taxpayer; it guarantees that the sometimes sensitive or otherwise personal information in a return will be guarded from persons not directly engaged in processing or inspecting the return for tax administration purposes." *Nat'l Treasury Employees Union v. Fed. Labor Relations Auth.*, 791 F.2d 183, 184 (D.C. Cir. 1986).

The Diazes have not cited any law showing that a violation of § 6103 can be remedied via § 1983. The case they quote, *Huckaby*, involved a plaintiff who sued under 26 U.S.C. § 7431. *See Huckaby*, 794 F.2d at 1044-45. And the relevant part of § 7431 reads as follows:

> If any officer or employee of the United States knowingly, or by reason of negligence, inspects or discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103, such taxpayer may bring a civil action for damages *against the United States* in a district court of the United States.

26 U.S.C. § 7431(a)(1) (emphasis added).[4] The problem, of course, is that the Diazes have not sued the United States. They have sued Lampton – now replaced by Lampton's Estate.

In other words, when asked what constitutional provision or federal statute Lampton violated, the Diazes pointed to § 6103. The remedy for violating that statute, however, is to file a suit against the United States via § 7431(a)(1), not a § 1983 suit against the individual federal employee. *E.g.*, *Johnson I*, 47 F.3d at 722-23 (plaintiff's suit for violation of § 6103 brought through

---

[4] Another provision of § 7431 authorizes a civil action against "any person who is *not* an officer or employee of the United States" who "discloses any return or return information" in violation of § 6103. 26 U.S.C. § 7431(a)(2) (emphasis added). This provision does not apply to this case because Lampton was a federal officer.

an enabling statute under Title 26 of the United States Code, not § 1983).[5] The Diazes have not cited any law supporting their § 1983 cause of action.

To this, the Diazes may have argued that § 7431 is not the sole federal remedy for Lampton's actions, such that they can bring a § 1983 suit alongside other federal causes of action.

Fifth Circuit case law suggests otherwise. That court, like "the majority of the courts that have considered the interaction of § 6103 with the Privacy Act, 5 U.S.C. § 552a, ha[s] concluded that § 6103 and § 7431 provide the exclusive remedy for disclosures of tax return information." *Hobbs v. United States ex rel. Russell*, 209 F.3d 408, 411 (5th Cir. 2000) (citations omitted). The court's reasoning is straightforward:

> [A] precisely drawn, detailed statute preempts more general remedies. Section 6103 is dedicated entirely to confidentiality and disclosure issues related to tax returns and tax return information. It covers approximately thirty-five pages of the United States Code. The Privacy Act, by contrast, prohibits disclosures at a generic level, providing that no agency shall disclose any record which is contained in a system of records. It is fair to say, then, that § 6103 is a more detailed statute that should preempt the more general remedies of the Privacy Act, at least where, as here, those remedies are in conflict.

*Id.* at 412 (quotation marks, citations, and brackets omitted).

Although the *Hobbs* court did not consider whether § 7431 preempts a § 1983 suit for wrongful disclosure of tax records, its language indicates that § 7431 is likely the sole federal remedy because it is more detailed and specific to disclosures of tax records than § 1983. *See also Wilkie v. Robbins*, 551 U.S. 537, 553 (2007) (declining to create a *Bivens* cause of action in part because respondent had "an administrative, and ultimately a judicial, process for vindicating virtually all of his complaints"); *Schweiker v. Chilicky*, 487 U.S. 412, 429 (1988) (declining to authorize a *Bivens* cause of action for persons denied Social Security benefits where "Congress . . . has addressed the problems created by state agencies' wrongful termination of disability benefits . . . in the design of a massive and complex welfare benefits program").

It also should be noted that sections 7431 and 1983 are contradictory in that they authorize

---

[5]  The Estate is correct that the authorizing statute in *Johnson I* is the predecessor of § 7431. "The Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 324, repealed 26 U.S.C. § 7217, which had provided a cause of action against 'any person,' presumably including IRS agents, as to disclosures made after September 3, 1982. Section 7431, also created by the 1982 Act, allows suits for damages to be brought against the United States instead." *Huckaby*, 794 F.2d at 1048 n.6.

relief against different defendants. Under *Hobbs*, the existence of such a conflict provides additional support for deferring to the more detailed statutory scheme: § 7431.

Based on these authorities, § 1983 likely does not provide relief for the Diazes. The federal remedy for what Lampton is alleged to have done lies in another statute which requires a different defendant to have been named and served. In the qualified immunity analysis, that means the Diazes' allegations do not "make out a violation of a constitutional [or statutory] right," and the Estate is entitled to qualified immunity on the § 1983 claim. *Pearson*, 555 U.S. at 232 (citations omitted).

### c.      Clearly established law

With the Diazes' § 1983 claim unavailing and no other federal cause of action defended in their brief, no further analysis is necessary. The undersigned will proceed, however, in case an appeal is taken and the Fifth Circuit desires to consider the remainder of the § 1983 analysis.

The question under this element is whether the law prohibiting Lampton from distributing tax records to the Mississippi Commission on Judicial Performance was clearly established in July 2006, when Lampton submitted his complaint to that body. *See* Docket No. 32.

The Diazes argue that a "disclosure unauthorized by Section 6103 . . . constitutes a violation of clearly established law." Docket No. 210, at 15. They cite a 1986 case where the Fifth Circuit found it "clear from these statutes [§ 6103] and [Treasury] regulations . . . that the IRS cannot disclose return information to a state agency without some written communication."[6] *Huckaby*, 794 F.2d at 1047.[7] The Estate contends that no case law shows that Lampton's conduct violated clearly established law. Docket No. 205, at 20.

"Qualified immunity is applicable unless the official's conduct violated a clearly established

---

[6]  The written communication in *Huckaby* meant written consent from the taxpayer or "a written request by the head of the state agency." *Huckaby*, 794 F.2d at 1046.

[7]  Another part of the Diazes' brief had this to say: "The Estate argues that 'there is not a single case establishing that Dunnica Lampton violated clearly established law.' Yet there is: *this case*." Docket No. 210, at 9 (brackets and citation omitted).

This argument misunderstands the clearly established element of qualified immunity. A plaintiff cannot use his own case to show that the law was clearly established *before* his constitutional or statutory violation occurred. It is impossible. This case did not exist in July 2006, so it could not have given Dunn Lampton "fair warning" that what he was about to do violated federal law. The question is whether some earlier precedent put him on notice before July 2006.

constitutional [or statutory] right." *Pearson*, 555 U.S. at 232 (citation omitted). "To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Kinney*, 367 F.3d at 349-50 (quotation marks, citation, and brackets omitted).

The Fifth Circuit has explained that "[t]he central concept is that of fair warning: The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Id.* at 350 (quotation marks and citation omitted); *see also Kiser v. Garrett*, 67 F.3d 1166, 1170 (5th Cir. 1995) ("This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . ; but it is to say that in light of pre-existing law the unlawfulness must be apparent."). This element is essential because "[i]f the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

After reviewing the state of the law in July 2006, the Court is persuaded that it was clearly established at that time that Lampton's distribution of the Diazes' confidential tax records to the Mississippi Commission on Judicial Performance violated federal law.

Contrary to the Estate's arguments, a § 1983 claim may be grounded in the plain language of a federal statute. *E.g.*, *Kinney*, 367 F.3d at 352 ("Although a body of cases is typically required in order to give clear shape to vague constitutional provisions referring to 'due process of law' or 'cruel and unusual punishments,' we believe that the text [of 42 U.S.C. § 1985] is itself sufficient to put reasonable officials on notice that the word 'witness' includes expert witnesses.") (emphasis added); *Thompson v. Upshur Cnty., TX*, 245 F.3d 447, 457 (5th Cir. 2001) ("The defendant's acts are held to be objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution *or the federal statute* as alleged by the plaintiff.") (emphasis added).

The version of § 6103 in effect in July 2006 stated that "[r]eturns and return information *shall* be confidential" except as authorized by the statute's enumerated exceptions, and that no current or former federal employee with access to tax returns "shall disclose any return or return

information obtained by him in any manner," again unless in accordance with the statute's exceptions. 26 U.S.C. § 6103(a) (eff. Jan. 1, 2006 to Aug. 16, 2006) (emphasis added); *see generally* Saltzman & Book, Confidentiality and Disclosure of Tax Returns, IRS Prac. & Proc. ¶ 4.07, 2002 WL 1999928 (describing in detail the operation of § 6103).

The Estate argues that a statutory exception for Department of Justice officials permitted Lampton to distribute the Diazes' tax information to the Mississippi Commission on Judicial Performance, since that body is arguably "an arm of the Supreme Court of Mississippi and therefore a State court." Docket No. 205, at 9-11 (citations omitted). The exception in question, § 6103(h)(2), read as follows:

> (2) Department of Justice.-- In a matter involving tax administration, a return or return information shall be open to inspection by or disclosure to officers and employees of the Department of Justice (including United States attorneys) personally and directly engaged in, and solely for their use in, any proceeding before a Federal grand jury or preparation for any proceeding (or investigation which may result in such a proceeding) before a Federal grand jury or any Federal or State court, but only if--

>> (A) the taxpayer is or may be a party to the proceeding, or the proceeding arose out of, or in connection with, determining the taxpayer's civil or criminal liability, or the collection of such civil liability in respect of any tax imposed under this title;

>> (B) the treatment of an item reflected on such return is or may be related to the resolution of an issue in the proceeding or investigation; or

>> (C) such return or return information relates or may relate to a transactional relationship between a person who is or may be a party to the proceeding and the taxpayer which affects, or may affect, the resolution of an issue in such proceeding or investigation.

26 U.S.C. § 6103(h)(2) (eff. Jan. 1, 2006 to Aug. 16, 2006).

This exception granted federal officials license to use tax records "[i]n a matter involving tax administration." *Id.* But "tax administration" was defined earlier in § 6103 as follows:

> (4) Tax administration.--The term "tax administration"--

>> (A) means–

>>> (i) the administration, management, conduct, direction, and

> supervision of the execution and application of the internal revenue laws or related statutes (or equivalent laws and statutes of a State) and tax conventions to which the United States is a party, and
>
> (ii) the development and formulation of Federal tax policy relating to existing or proposed internal revenue laws, related statutes, and tax conventions, and
>
> (B) includes assessment, collection, enforcement, litigation, publication, and statistical gathering functions under such laws, statutes, or conventions.

*Id.* at 6103(b)(4).

This definition confirms that Lampton was entitled to use the Diazes' tax records before the federal grand jury and in Oliver Diaz's two federal criminal trials because those proceedings related to the enforcement of "internal revenue laws or related statutes." *Id.* at 6103(b)(4)(A)(I). That authority is not disputed by the parties.

The definition did not, however, grant Lampton permission to share the Diazes' tax records with the Mississippi Commission on Judicial Performance. Even assuming that body is a state court, as the Estate urges, the Commission's authority does not extend to enforcing federal or state revenue laws. That means distribution of the records to the Commission did not concern "tax administration" as defined in § 6103. Therefore, the invoked exception of § 6103(h)(2) does not show Lampton's authority to disseminate the Diazes' records to the Commission. *Accord* United States Attorneys' Manual, Tax Resource Manual § 22 ("Coordination of Parallel Criminal, Civil, and Administrative Tax Proceedings"), at Part VII (stating that § 6103's privacy requirements "are not an impediment to the government's ability to use parallel proceedings for effective enforcement *of the tax laws*.") (emphasis added).[8, 9]

---

[8]  This source is available at http://www.justice.gov/usao/eousa/foia_reading_room/usam/title6/tax00022.htm.

[9]  Department of Justice Manuals offer United States Attorneys and their Assistants a wealth of information and historical background on the limitations of the use of tax information. Part VIII of the Manual just quoted, for example, cautions prosecutors that although "courts have approved parallel [criminal and civil] proceedings, they also have recognized that multiple actions against individuals have the potential for abuse." *See also* United States Attorneys' Manual, Criminal Resource Manual §§ 501 ("Since January 1, 1977, disclosure of returns and return information has been prohibited except as specifically provided in 26 U.S.C. § 6103, as amended, or other sections of the Code. Disclosure in violation of these provisions subjects the offender to possible criminal penalties."), 505, 515 ("Requests for Disclosure of Tax Returns and Return Information From the IRS Not Relating to Tax Administration"), *available at* http://www.justice.gov/usao/eousa/foia_reading_room/usam/title9/crm00500.htm.

Moreover, pre-2006 case law clearly establishes the confidentiality of tax returns and strict compliance with § 6103's enumerated exceptions. "Section 6103 establishes a general, salutary rule that 'returns' and 'return information' shall be confidential. Disclosure by a government employee is prohibited unless a specific statutory exception provides for it." *Johnson v. Sawyer*, 120 F.3d 1307, 1317 (5th Cir. 1997) [*Johnson II*]. Of particular relevance here is the Fifth Circuit's holding in *Johnson II* that a public disclosure of tax information in open court did not make that information freely available for future public distribution. As the court put it, "[i]f the immediate source of the information claimed to be wrongfully disclosed is tax return information ('return' or 'return information' pursuant to § 6103), the disclosure violates § 6103, *regardless* of whether that information has been previously disclosed (lawfully) in a judicial proceeding and has therefore arguably lost its taxpayer 'confidentiality.'" *Id.* at 1318-19; *see also id.* at 1323. Other pre-2006 case law also contains strong language about how "taxpayer confidentiality must be jealously guarded from careless or unnecessary disclosures," as well as the specific admonition that disclosures of tax information "are prohibited by statute unless authorized in the precise manner indicated in § 6103." *Nat'l Treasury Employees Union*, 791 F.2d at 184.

While the 'clearly established' requirement may not be necessary to reach here or on appeal, it has been addressed in the interests of avoiding a remand for resolution of that element. With that caveat, the Court concludes that in July 2006, it was clearly established under federal law that Dunn Lampton could not send the Diazes' confidential tax information to the Mississippi Commission on Judicial Performance.

## IV. Jurisdiction

"This Court must examine the basis of its jurisdiction, on its own motion, if necessary." *Mosley v. Cozby*, 813 F.2d 659, 660 (5th Cir. 1987) (citation omitted). Although two jurisdictional grants have been invoked in this case to date, the disposition of the Diazes' federal claims and the Estate's federal defenses suggest that this Court's subject matter jurisdiction is now lacking.

### A. Federal Question Jurisdiction

The dismissal of the Diazes' federal causes of action means there is no longer any federal question jurisdiction.

### B. 28 U.S.C. § 1442

Lampton's Notice of Removal claimed subject matter jurisdiction under 28 U.S.C. § 1442.

15

That statute permits a state court action to be removed to federal court when it is brought against:

> The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1).

"Historically, removal under § 1442(a)(1) and its predecessor statutes was meant to ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his official duties." *Arizona v. Manypenny*, 451 U.S. 232, 241 (1981). "Federal involvement is necessary in order to insure a federal forum, but it is limited to assuring that an impartial setting is provided in which the federal defense of immunity can be considered during prosecution under state law." *Id.* at 242.

The circumstances of this case suggest that § 1442 is now inapplicable. First, neither the Diazes' remaining claims nor the Estate's remaining defenses relate to Lampton acting "under color of" his office. "The under-color-of-office element requires that the act complained of have been taken under asserted official federal authority to enforce federal law and that there be a causal connection between that act and the state lawsuit." 16 Moore's Fed. Prac. § 107.15[1][b][iv][B] (3d ed.); *see also Maryland v. Soper*, 270 U.S. 9, 33 (1926) ("It must appear that the prosecution of him for whatever offense has arisen out of the acts done by him under color of federal authority and in enforcement of federal law . . . ."); The Rutter Group, 2D Fed. Civ. Proc. Before Trial at [2:2895] (Hittner, J., ed., 2013).

Although this hurdle "is quite low," the Estate cannot articulate how Lampton was "enforc[ing] federal law" by distributing tax records to the Mississippi Commission on Judicial Performance. 16 Moore's § 107.15[1][b][iv][B]. That body does not enforce federal law. The timeline of events, in fact, shows that when Lampton sent records to that body, he had *already* enforced federal law by bringing criminal cases against Oliver and Jennifer Diaz.

The first federal criminal case ended for Oliver Diaz in August 2005, when a jury found him not guilty on a number of charges. The second federal criminal case resulted in an April 27, 2006 jury verdict once again finding Oliver Diaz not guilty, and Jennifer Diaz's June 2006 sentencing pursuant to a guilty plea.

16

Lampton sent the Diazes' tax returns to the Mississippi Commission on Judicial Performance in July 2006. *See also* Docket No. 103, at 10 ("Lampton provided the tax records to the Commission after Diaz was acquitted."). It is difficult to see how any federal interest remained at that time. His Estate certainly has not articulated what federal interest Lampton advanced by sharing the Diazes' tax information with that body at that time.

Also important is the Supreme Court's admonition that "an unbroken line of this Court's decisions extending back nearly a century and a quarter have understood all the various incarnations of the federal officer removal statute to require the averment of a federal defense." *Mesa v. California*, 489 U.S. 121, 133-34 (1989). The Estate's remaining defenses have nothing to do with the U.S. Attorney's Office, absolute prosecutorial immunity, § 6103, or the qualified immunity afforded governmental officials. Rather, they concern whether Lampton is immunized from liability for sending records to the Mississippi Commission on Judicial Performance as a private complainant pursuant to Mississippi Code § 9-19-29, or else as a member of the Mississippi Bar pursuant to the Mississippi Rules of Professional Conduct. Those state law defenses are too attenuated from Lampton's federal office to satisfy the federal defense requirement, and there is no other federal defense to the Diazes' state law claims.

Finally, this case also does not involve a federal official acting "for the apprehension or punishment of criminals or the collection of the revenue." 28 U.S.C. § 1442(a)(1). The criminal actions against the Diazes had concluded when Lampton sent the Diazes' tax records to the Commission. And it cannot reasonably be maintained that filing a complaint with the Commission on *Judicial* Performance would lead to "the collection of the revenue," since that body has nothing to do with collecting taxes.

Accordingly, this statute will not suffice to confer subject matter jurisdiction over this case.

### C.    Supplemental Jurisdiction

Consider what remains. Oliver and Jennifer Diaz, citizens of Mississippi, are suing the Estate of Dunn Lampton, a legal entity created in the Chancery Court of Hinds County, Mississippi, for state law claims of abuse of process, malicious prosecution, infliction of emotional distress, invasion

of privacy, civil conspiracy, misprision, and the tort of outrage.[10] To these claims, the Estate has asserted immunities grounded in a Mississippi statute, Mississippi case law (*Netterville v. Lear Siegler, Inc.*, 397 So. 2d 1109 (Miss. 1981)), and the Mississippi Rules of Professional Conduct.

Against this backdrop, the acceptance or declination of supplemental jurisdiction over state law claims is governed by 28 U.S.C. § 1367(c).

> Section 1367 authorizes a court to decline supplemental jurisdiction over a state law claim if: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. The general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial, but this rule is neither mandatory nor absolute; no single factor is dispositive, and this Court must review the district court's decision in light of the specific circumstances of the case at bar.

*Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009) (citations omitted). Courts are also to consider "the common law factors of judicial economy, convenience, fairness, and comity." *Id.* (citation omitted).

### 1.      Section 1367(c)

On the first factor, the Diazes' state law claims plainly raise novel and complex issues of Mississippi immunity law. As the prior District Judge assigned to this case wrote, Mississippi Code § 9-19-29 "has never been applied in any reported decision" by a Mississippi state court. Docket No. 103, at 22; *see Enochs v. Lampasas Cnty.*, 641 F.3d 155, 159 (5th Cir. 2011) (remanding where plaintiff's claims and arguments "concern[] a novel Texas state law issue with no Texas Supreme Court guidance").

One indication that the issues are novel and complex is the fact that the prior District Judge and the Fifth Circuit arrived at opposite results in interpreting the scope of Mississippi Code § 9-19-29 with respect to Leslie Lampton. *Compare* Docket No. 103, at 22-27 (observing the lack of State authorities, considering the statute in light of the Mississippi Supreme Court's decisions in *Netterville* and other cases, and concluding that state-law absolute immunity did not apply to Leslie

---

[10]  Any arguable federal misprision cause of action has been abandoned by the Diazes as discussed in Part III(C)(2), *supra*. What is left of misprision, if anything, is a state law claim.

Lampton's public disclosure of the Commission proceeding), *with L. Lampton*, 661 F.3d at 900-02 (finding the "cases on which the district court relied . . . inapposite," relying upon a different Mississippi Supreme Court decision, and concluding that Leslie Lampton's disclosure of the Commission proceeding was entitled to absolute immunity under Mississippi law). Noting the disagreement, a dissent called for the issue to be certified to the Mississippi Supreme Court. *Id.* at 903 (Haynes, J., dissenting) ("This case presents a close question.").

Section 1367(c)(3) also supports declining supplemental jurisdiction, since this Court has dismissed all of the claims over which it had original federal question jurisdiction. *E.g.*, *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988) ("When the single federal-law claim in the action was eliminated at an early stage of the litigation, the District Court had a powerful reason to choose not to continue to exercise jurisdiction.").[11]

### 2.    Common Law Factors

The common law factors are less uniform but also support remand. Judicial economy appears to favor supplemental jurisdiction, convenience is in equipoise, and fairness and comity favor declining supplemental jurisdiction.

In *Brookshire Bros.*, the Fifth Circuit identified a series of cases where district courts should have resolved state law claims because a significant amount of (federal) judicial resources had already been invested in the litigation. *Brookshire Bros.*, 554 F.3d at 602-03. The federal resources invested in this case include a lengthy ruling by the prior District Judge on Motions to Dismiss and for Summary Judgment, two interlocutory appeals to the Fifth Circuit, and a skirmish over whether the Estate could be substituted in Lampton's place. All claims against Leslie Lampton and Darlene Ballard were dismissed early on, and as of today the Diazes' federal claims against Dunn Lampton will be dismissed as well. This factor tends to support the exercise of supplemental jurisdiction.

The second factor, convenience, does not lend support to either side of the jurisdictional question. The location of the parties, evidence, and witnesses suggest it is equally convenient to litigate this case in this federal court or state court.

The fairness factor provides some support for sending the state law claims to state court. In *Enochs*, the Fifth Circuit concluded that "it was certainly fair to have had the purely Texas state law

---

[11]  The second and fourth factors do not support the exercise or declination of supplemental jurisdiction.

claims heard in Texas state court, and there is nothing to indicate that either party would have been prejudiced by a remand to Texas state court." *Enochs*, 641 F.3d at 160. Nothing in our case suggests a contrary outcome.

On the final factor, considerations of comity strongly support declining supplemental jurisdiction

> The comity doctrine counsels lower federal courts to resist engagement in certain cases falling within their jurisdiction. The doctrine reflects a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in separate ways.

*Levin v. Commerce Energy, Inc.*, 130 S. Ct. 2323, 2330 (2010) (quotation marks and citations omitted); *see Felder v. Estelle*, 693 F.2d 549, 554 (5th Cir. 1982) ("I understand comity to express federalism by deference to the sovereign interests of a state.") (Higginbotham, J., concurring). "Statutes conferring federal jurisdiction, we have repeatedly cautioned, should be read with sensitivity to 'federal-state relations' and 'wise judicial administration.'" *Levin*, 130 S. Ct. at 2331 (citation omitted).

The most deferential, accurate, and efficient way to resolve the complex issues raised by the Diazes' state law claims and the Estate's state law defenses is to allow Mississippi's courts to resolve them firmly and finally. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 122 n.32 (1984) ("when a federal decision on state law is obtained, the federal court's construction often is uncertain and ephemeral"). Having Mississippi courts decide unresolved questions of Mississippi immunities law would promote comity and federal-state relations, as well as render as unnecessary the delays inherent in certifying the eventual question to the Mississippi Supreme Court. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."); *see also Enochs*, 641 F.3d at 160 (remanding in part because "comity demands that the important interests of federalism and comity be respected by federal courts, which are courts of limited jurisdiction and not as well equipped for determinations of state law as are state courts").

On balance, then, more of the common law factors support remand than the exercise of

20

supplemental jurisdiction. The only factor to support maintenance of jurisdiction here is the reality that federal courts have spent judicial resources on this case. But the expenditure of federal judicial resources on a case is not dispositive of supplemental jurisdiction where, as here, novel and complex issues of state law remain. *See Knatt v. Hosp. Serv. Dist. No. 1 of East Baton Rouge Parish*, 373 Fed. App'x 438, 442-43 (5th Cir. 2010) (finding that district court did not abuse its discretion when declining supplemental jurisdiction over case which presented a novel and complex issue of state law, even though parties had consumed federal judicial resources by engaging in substantial discovery resulting in over 7,000 pages of discovery and 29 depositions). And the undersigned is hesitant to spend even more federal judicial resources to manage discovery, proceed through summary judgment, resolve motions *in limine*, and hold a trial when only state law claims remain.

It also is relevant that because no discovery has occurred here, "the parties would not have to repeat the effort and expense of the discovery process" in state court, and that state court will be able to control that process from the outset. *Parker & Parsley Petrol. Co. v. Dresser Indus.*, 972 F.2d 580, 588 (5th Cir. 1992) (citation omitted). "There would be no need for either party to duplicate any research, discovery, briefing, hearings, or other trial preparation work, because very little had been done at that point." *Enochs*, 641 F.3d at 159.

### 3.    Section Conclusion

Because the enumerated factors of § 1367(c) strongly support declining supplemental jurisdiction, and the common law factors favor declining supplemental jurisdiction, the Court will decline supplemental jurisdiction. This conclusion dovetails nicely with the "general rule" to decline supplemental jurisdiction where, as in this case, the matter is well before trial on state law claims. *See Parker & Parsley*, 972 F.2d at 588 (vacating a federal court judgment on state law claims and dismissing for lack of federal jurisdiction where proceedings should have been remanded at an early stage, notwithstanding the federal court's resolution of a number of discovery matters and time spent in trial).

"When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Cohill*, 484 U.S. at 350. Accordingly, the Diazes' state law claims will be dismissed without prejudice so that they may be refiled in a state court of competent jurisdiction.

21

**V.      Conclusion**

The motion to dismiss is granted. The Diazes' federal claims are dismissed with prejudice for failure to state a claim, while their state law claims are dismissed without prejudice so that a state court of competent jurisdiction may resolve them. A Final Judgment will issue this day.

**SO ORDERED**, this the 26th day of June, 2013.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE